**Leroy N. BONKOWSKI, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 71-1279.**

United States Court of Appeals, Seventh Circuit.

April 4, 1972.

Max A. Reinstein, Chicago, Ill., for petitioner-appellant.

Johnnie M. Walters, Asst. Atty. Gen., Gilbert E. Andrews, Atty. Tax Div., U. S. Dept. of Justice, Washington, D. C., Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Daniel B. Rosenbaum, Virginia M. Hopkinson, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before CASTLE, Senior Circuit Judge, KILEY, Circuit Judge, and GRANT, District Judge.[1]

CASTLE, Senior Circuit Judge.

The petitioner-appellant, Leroy N. Bonkowski, prosecutes this appeal from

---

1. Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

a decision of the United States Tax Court which sustained assessments of federal income tax deficiencies against petitioner made by the Commissioner of Internal Revenue for the calendar years 1964, 1965 and 1966 in the total amount of $2,075.73. The contested deficiencies resulted from the Commissioner's disallowance of expenses and rental losses claimed by petitioner on his tax returns as attributable to the operation of a rental property, denial of a dependency exemption for petitioner's mother for the years 1964 and 1965, and refusal to permit the petitioner to use head of household rates in the computation of his tax liability for the year 1965.

The determinative issue presented by this appeal is whether the Tax Court properly found and concluded that the petitioner was not the owner of the rental property located at 1501 N. Bosworth Avenue, Chicago, Illinois, during the tax years in question. If the petitioner was not the owner of the Bosworth Avenue property—a building containing a store and apartments—then he was not entitled to report the income and loss with respect thereto, and the gross income from such property was such that the owner, petitioner's mother,[2] could not be claimed by him as a dependent (Section 151(e) (1) (A) of the Internal Revenue Code), and the petitioner was not entitled to head of household status (Section 1(b) (2) (A) and (B)).

The record discloses that Josephine Bonkowski, the petitioner's mother, had become the sole owner of the Bosworth Avenue property on December 3, 1951, when the petitioner conveyed his ⅜th interest therein to her. Prior to that time Josephine Bonkowski had owned a ⅝th interest in the property. The petitioner, his mother, and petitioner's brother, Byron Bonkowski, lived together on the premises during all of the tax years 1964, 1965 and 1966.

On January 1, 1964, Josephine Bonkowski executed an instrument which is captioned "AFFIDAVIT" and reads as follows:

I, Josephine Bonkowski, hereby quit-claim unto my son, Leroy Bonkowski, all my interest in the real estate commonly known as 1501 North Bosworth, Chicago, Illinois. My son shall hold this property subject to my occupying the premises for the rest of my natural life. After my death, said property is to be shared equally with my other son, Byron Bonkowski.

(Signed) Josephine Bonkowski

The Tax Court held that this instrument was ineffective as a conveyance of the property under Illinois law, and that, accordingly, the petitioner was not entitled to report the income and expenses attributable thereto as his, to claim his mother as a dependent (the gross income from the property being in excess of $600 for each of the years involved), or to use the rate established for persons in a head of household status in computing his income tax for the years in question.[3] The court, therefore, sustained the deficiency assessments made by the Commissioner.

In arriving at its holding that the document signed by Josephine Bonkowski on January 1, 1964, was ineffective to transfer ownership to the petitioner the court recognized that a literal or strict compliance with the statutory form of deed is not essential to an instrument's effectiveness to transfer title if the intention of the parties as gathered from a consideration of the instrument as a whole, and in the light of the circumstances attending its execution, was to effect a transfer of ownership. Thus, omission of the word "convey" and failure to recite the consideration, both elements of the statutory form of quit-claim deed (Ill.Rev.Stat., ch. 30, § 9), was not considered to be of control-

2. Petitioner's claim to ownership of the property is based on an alleged conveyance from his mother.

3. During each of the years involved gross income in excess of $600 disqualified the petitioner's mother from being a "dependent" and also made petitioner ineligible for "head of household" status based on dependency of his mother.

ling import. This was in accord with the Illinois holdings to the effect that no particular form of words of grant is necessary in a deed provided it expresses the intention to convey title. I.L.P. Conveyances, § 36; Shadden v. Zimmerlee, 401 Ill. 118, 81 N.E.2d 477. In *Shadden* the word "convey" was not used in an instrument designated as a quit-claim deed but the language employed and the attending circumstances established intent to transfer ownership, and the instrument was held sufficient to effect such transfer. But, on the basis of the circumstances attending the execution of the instrument here involved, including the testimony of both Josephine Bonkowski and of the attorney who prepared the document, the Tax Court found that its intended purpose was not to effect a transfer of ownership but rather was to attempt to give petitioner the opportunity to report the income and expenses as his, and to claim his mother as a dependent, for income tax purposes.

■ Apart from its failure to incorporate two of the formal elements of the statutory form of quit-claim deed, the document signed by Josephine Bonkowski was ambiguous on its face. Its attempted incorporation of a testamentary disposition of the property to both the petitioner and his brother, although not accompanied by the statutory prerequisites for execution of a valid Will, served to becloud the existence of an intent to presently transfer ownership to the petitioner. From the standpoint of the controlling Illinois authorities it is evident that the court applied correct legal criteria in reaching its ultimate conclusion. In keeping with the teachings of Shadden v. Zimmerlee, *supra*, and the decisions cited and reviewed therein, the court proceeded to ascertain the true intent of the parties as gathered from the instrument as a whole and the circumstances of its execution.[4]

■ And, insofar as the court's ultimate conclusion rests on its factual findings with respect to the intent of the parties we perceive no basis for disturbing that conclusion. Those findings are amply supported by the record. They are based on substantial evidence. We cannot say that they are clearly erroneous. We are not convinced that a mistake has been made. Consequently, those findings must stand. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Carroll v. C.I.R., 7 Cir., 418 F.2d 91; Tripp v. C.I.R., 7 Cir., 337 F.2d 432; Allen v. C.I.R., 7 Cir., 283 F.2d 785; Wisconsin Memorial Park Company v. C.I.R., 7 Cir., 255 F.2d 751. In this connection there was testimony that for a number of years the petitioner had expended time and money in the repair and improvement of the Bosworth Avenue property, his brothers had put no money into the building, there was insufficient income from the property to carry its expenses, and that petitioner's mother had no other source of income. Josephine Bonkowski testified that she felt the best thing she could do was to turn the property over to the petitioner. But she also testified that in 1964 she was unwilling, out of concern for her other two sons, to deed the property to the petitioner. Her testimony in this respect was corroborated by the testimony of the attorney who prepared the so-called "affidavit". He testified that he prepared the document for Josephine Bonkowski's signature because she did not want to sign a deed. He had been retained to prepare the petitioner's income tax return and was of the view that it would be better for the petitioner to own the building since there was no income of Josephine Bonkowski to offset the loss from the operation of the building.

That the Tax Court pointed out that the "affidavit" was never recorded, that

---

4. Cf. Midwest-Radiant Corporation v. Hentze, 7 Cir., 171 F.2d 635; Law v. Kane, 384 Ill. 591, 52 N.E.2d 212; Magnolia Petroleum Co. v. West, 374 Ill. 516, 30 N.E.2d 24; D. M. Goodwillie Co. v. Commonwealth Electric Co., 241 Ill. 42, 89 N.E. 272.

712

subsequent to its execution Josephine Bonkowski, as owner of record, executed a mortgage on the property, and that in 1967 she deeded the property to the petitioner, does not, as urged by petitioner, militate against the court's holding. These factors constituted evidence of the practical construction which the parties themselves placed upon the instrument in question. They were not relied upon as the basis for the court's decision but served only as collateral indicia of the actual intent of the parties.

In view of the conclusion we have reached with respect to the basic and determinative issue presented by this appeal it is unnecessary for us to consider the contentions advanced by the petitioner in support of the particular items of expense claimed and to substantiate the claimed depreciation on the building.

The decision of the Tax Court is affirmed.

Affirmed.