T.C. Memo. 1997-551


UNITED STATES TAX COURT


SAFFET AND ANA USLU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9317-96.                    Filed December 16, 1997.


Saffet and Ana Uslu, pro se.

<u>Timothy F. Salel</u>, for respondent.


MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency of $2,869 in petitioners' Federal income tax for 1992.

---

[1]    Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Following settlement of various issues by the parties, the sole issue for decision is whether petitioners are entitled to a deduction for qualified residence interest under section 163(a).[2]

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Covina, California.

Saffet Uslu (petitioner husband) immigrated to the United States from Turkey and, during the early 1980's, studied for a graduate degree in petroleum engineering at the University of Southern California (USC). In 1983, while petitioner husband was attending graduate school, petitioner husband's brother, Haluk Uslu (Haluk), immigrated to the United States from Turkey and lived with petitioner husband. As an immigrant, Haluk was unable

[2]    The parties agreed to the following: (1) Petitioners are entitled to an automobile expense deduction of $2,559 on the Schedule C of petitioner husband; (2) petitioners are not entitled to a repair expense deduction of $908 claimed on the Schedule C of petitioner husband; (3) petitioners are not entitled to deduct $1,550 of the $2,509 meals and entertainment expense deduction claimed on the Schedule C of petitioner husband; (4) petitioners are not entitled to deduct $1,802 of the $5,267 "other expenses" claimed on the Schedule C of petitioner husband; (5) petitioners are not entitled to deduct "other expenses" of $1,254 claimed on the Schedule C of petitioner wife; and (6) petitioners are entitled to an additional self-employment tax deduction of $120 due to a change in net earnings from self-employment resulting from the aforementioned adjustments. The remaining adjustments to petitioners' child and dependent care credit and to petitioners' itemized deductions for charitable contributions and unreimbursed employee business expenses are computational and will be resolved by the Court's holding on the mortgage interest deduction issue.

to open a bank account in his name. Petitioner husband and Haluk opened a joint checking account (joint account) at California Federal Bank. Both petitioner husband and Haluk deposited money into and wrote checks out of this joint account.

Upon receiving his graduate degree from USC, petitioner husband returned to work briefly in Turkey. After working in Turkey for approximately 1 year, petitioner husband returned to the United States and began working in areas other than the field of engineering. Petitioner husband married Ana Uslu (petitioner wife), and two children were born of their marriage. During the year at issue, petitioner husband was employed as a real estate broker, and petitioner wife was employed as a registered nurse. In 1989, Haluk married Aysun S. Aslancirit (Aysun), and, at the time of his marriage, Haluk ceased making deposits into or writing checks out of the joint account. Petitioners assumed this account as their own.

In 1990, petitioners' unfortunate financial situation forced them to file for a Chapter 7 bankruptcy. Shortly thereafter, through petitioner husband's work as a real estate broker, petitioners located a house that they desired to purchase as a residence. The house was located at 733 East Alisal Street in Covina, California (Alisal property). Because of their bankruptcy and poor credit rating, petitioners were unable to qualify for financing to purchase the Alisal property.

Petitioner husband discussed this problem with Haluk, and the two agreed that Haluk and his wife, Aysun, would obtain financing, in their names, for the purchase of the Alisal property, and that legal title to the property would be transferred to Haluk and Aysun. They further agreed that, upon the purchase of the Alisal property, petitioners and their children would occupy the Alisal property, and petitioners would make all mortgage payments on the property as well as paying all expenses for repairs, maintenance, and improvements. Basically, they agreed that Haluk and Aysun would execute documents necessary to procure title to and financing for the Alisal property, and petitioners would exclusively occupy the property and perform all the obligations pursuant to ownership of the property, financial and otherwise. All of these agreements were oral but are undisputed.

On April 9, 1990, a Grant Deed was issued to Haluk and Aysun for the Alisal property. Initially, the Alisal property was sold by an assumption of the existing mortgage on the property. Petitioners made mortgage payments directly to the mortgagee. In October 1990, Haluk and Aysun refinanced the loan, and, pursuant thereto, a Deed of Trust was executed on October 5, 1990, listing Haluk and Aysun as borrowers. The Deed of Trust was in the amount of $202,500 and was in favor of Southern California Federal Savings and Loan Association (Southern California Federal). The Deed of Trust on the Alisal property served as

security for the loan.  Due to extensive repairs needed on the Alisal property, petitioners and their children were unable to occupy the property until June 1991.

Nevertheless, petitioners made all the required mortgage payments to Southern California Federal, with respect to the Alisal property, from the commencement of the mortgage up until trial of this case, including the entire year at issue.  During 1992, petitioners paid a total of $18,980 to Southern California Federal as interest on the mortgage of the Alisal property. Petitioners also paid all repairs, improvements, and maintenance on the Alisal property since the time of its purchase in 1990. Up to the date of trial, Haluk and Aysun had never occupied the Alisal property; they never made any payments on the Alisal property, either as to mortgage, repairs, maintenance, improvements, or otherwise, and they never agreed to or ever intended to spend their money on the property.

On their Federal income tax return for 1992, petitioners claimed on Schedule A, Itemized Deductions, a deduction of $18,980 for home mortgage interest, representing the mortgage interest paid on the Alisal property during 1992.  In the notice of deficiency, respondent disallowed the home mortgage interest deduction for the reason that "The interest expense you claimed is not deductible since you are not legally liable for the debt." Haluk and Aysun did not claim a Federal income tax deduction for

the Alisal property mortgage interest for the year 1992, nor did they ever claim deductions on their tax returns for interest or taxes attributable to this property.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction, and that such deduction fits squarely within the ambit of the statute providing the deduction. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).

Section 163(a) provides that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. Section 163(h)(1), however, provides that, in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest paid or accrued during the taxable year. Section 163(h)(2) defines "personal interest" to mean any interest allowable as a deduction other than, inter alia, "any qualified residence interest". Sec. 163(h)(2)(D). Thus, qualified residence interest is deductible under section 163(a). The term "qualified residence interest" is defined, in pertinent part, in section 163(h)(3)(A)(i), as any interest paid or accrued during the taxable year on "acquisition indebtedness

with respect to any qualified residence of the taxpayer". The parties do not dispute that the Alisal property was petitioners' qualified residence. The dispute is whether petitioners' payments constituted interest on "acquisition indebtedness" with respect to the Alisal property.

The "acquisition indebtedness" in section 163(h)(3)(A)(i) must, in general, be an obligation of the taxpayer and not an obligation of another. See Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), affg. T.C. Memo. 1976-150; Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986); Hynes v. Commissioner, 74 T.C. 1266, 1287 (1980). However, section 1.163-1(b), Income Tax Regs., provides, in pertinent part:

> Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. * * *

In Golder v. Commissioner, supra, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would generally lie, indicated that section 1.163-1(b), Income Tax Regs., allows the deduction of interest by the taxpayer, even though the taxpayer is not personally liable for the mortgage as, for example, where the mortgage is nonrecourse, or where the taxpayer purchases property subject to a mortgage. In such situations,

although the taxpayer is not directly liable on the debt, since the mortgage creditor may look only to the mortgaged property for payment, and the taxpayer stands to lose the property if the mortgage is not paid, the taxpayer must pay the mortgage to avoid foreclosure. Thus, section 1.163-1(b), Income Tax Regs., recognizes the economic substance of nonrecourse borrowing and allows an interest deduction to a taxpayer, who, in the situations contemplated in that regulation, is not directly liable on the mortgage indebtedness.

Respondent contends that petitioners may not deduct the subject mortgage interest payments because they had no legal obligation to Southern California Federal with respect to such mortgage. Respondent cites Golder v. Commissioner, supra, for the proposition that section 1.163-1(b), Income Tax Regs., does not create an exception to the rule of section 163(a) that interest is deductible only with respect to the indebtedness of the taxpayer. In other words, respondent contends that section 1.163-1(b), Income Tax Regs., applies only to situations in which the taxpayer has procured nonrecourse debt, and does not apply to a situation, such as in the instant case, where a person other than the taxpayer is legally obligated on a mortgage. Respondent also cites Loria v. Commissioner, T.C. Memo. 1995-420, and Song v. Commissioner, T.C. Memo. 1995-446, in which this Court held that the taxpayers could not deduct mortgage interest payments

made by them on residences of which legal title was held by a sibling of the taxpayer. These cases, however, are distinguishable from the instant case.

In Golder v. Commissioner, supra, the taxpayers were guarantors of a debt of their corporation, which debt was also secured by the taxpayers' home. The Court of Appeals for the Ninth Circuit held that the indebtedness in that case was not that of the taxpayers but, rather, was that of the corporation, and that the taxpayers had merely guaranteed that debt. That is not the situation in this case.

In Loria v. Commissioner, supra, and Song v. Commissioner, supra, the taxpayers made mortgage payments on residences upon which legal title was held in each case by the taxpayer's brother. In both cases, the taxpayer's brother was also indebted to a third party commercial mortgage lender in connection with such residence. In both cases, the Court denied mortgage interest deductions to the taxpayers for the reason that the taxpayers had failed to prove that they held any equitable or beneficial ownership in the residences. In the cases relied on by respondent, the Court held that the subject indebtedness was not that of the taxpayer, and that the taxpayer did not have an ownership interest in the mortgaged property.

In the instant case, petitioners' agreement with Haluk and Aysun coupled with petitioners' continued occupancy of the Alisal

property and the performance by petitioners of all of the obligations under the Alisal property mortgage are sufficient to render petitioners' obligation to pay off the mortgage, an enforceable debt, to Haluk and Aysun for the amount of the mortgage at the interest rate specified in the mortgage. See Amundson v. Commissioner, T.C. Memo. 1990-337; Belden v. Commissioner, T.C. Memo. 1995-360. On this record, the Court finds that the mortgage payments made by petitioners to Southern California Federal with respect to the Alisal property were, in effect, payments of principal and interest to Haluk and Aysun. See id. In other words, the payments by petitioners constituted payments on an indebtedness of petitioners.

To be sure, as required by section 1.163-1(b), Income Tax Regs., the taxpayer must be the "legal or equitable owner" of the property. Where the taxpayer has not established legal, equitable, or beneficial ownership of mortgaged property, this Court has disallowed the taxpayer a deduction for the mortgage interest. See Bonkowski v. Commissioner, T.C. Memo. 1970-340, affd. 458 F.2d 709 (7th Cir. 1972); Song v. Commissioner, supra.

Legal title to the Alisal property was held in the names of Haluk and Aysun during 1992. Nevertheless, since the time of the purchase of the Alisal property, petitioners have made each and every mortgage payment on the property and have paid all expenses for repairs, maintenance, and improvement in connection with such

property from their own income.  The real property taxes and insurance on the Alisal property were paid from an escrow account at Southern California Federal that was funded with a portion of petitioners' mortgage payments.  Furthermore, petitioners and their children have been the sole occupants of the Alisal property since the time of its purchase in 1990.

Haluk and Aysun have made no payments, either directly or indirectly, in connection with the Alisal property for the mortgage, repairs, maintenance, or otherwise.  They have not acted in such a manner that would be consistent with an ownership interest in the Alisal property.  Haluk and Aysun have made no claim of ownership interest in the Alisal property since the time of its purchase.  Furthermore, Haluk testified at trial that the sole reason he and Aysun procured legal title to the Alisal property and obtained a mortgage loan secured by such property was to assist petitioners in obtaining the Alisal property for petitioners' residence.  Additionally, during 1995, Haluk and Aysun executed a quitclaim deed transferring legal title to the Alisal property to petitioners.[3]  This quitclaim deed, however, was not recorded.  At trial, Haluk testified unequivocally that, even though he and Aysun recognized their liability on the

---

[3]    The face of this quitclaim deed stated that it was "Ratified 4/9/90", which the Court surmises was intended to make the quitclaim deed retroactive to the date of the initial purchase of the property.

indebtedness, if he and Aysun were ever called upon to pay the indebtedness (arising from a default by petitioners), they would look to petitioners for payment of whatever amounts that Haluk and Aysun paid to the mortgage lender. The Court is satisfied that, should that situation ever arise, Haluk and Aysun would have a cause of action against petitioners.

The Court is satisfied, from all the evidence presented, that petitioners have continuously treated the Alisal property as if they were the owners, and that they, exclusively, held the benefits and burdens of ownership thereof. On this record, the Court holds that petitioners established equitable and beneficial ownership of the Alisal property, and that they were liable to Haluk and Aysun in respect of the mortgage indebtedness. As such, the Court holds that petitioners are entitled to a deduction for the $18,980 home mortgage interest paid by them during 1992.

Decision will be entered
under Rule 155.