T.C. Memo. 2010-72

UNITED STATES TAX COURT

ANTHONY J. ADAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2563-08.                    Filed April 13, 2010.

Anthony J. Adams, pro se.

<u>Bryan E. Sladek</u> and <u>Robert D. Heitmeyer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  For 2003 and 2004 respondent determined deficiencies in petitioner's Federal income taxes, additions to tax, and penalties as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2003 | $38,020   | $6,304.00                      | $7,604               |
| 2004 | 20,705    | 1,983.25                       | 4,141                |

As an initial matter, neither party argued or briefed whether: (1) The Essex Drive trust should have claimed the mortgage interest deduction pursuant to section 163(h)(4)(D)[1] and the provisions of subchapter J; (2) petitioner could have claimed the mortgage interest deduction as investment interest, Davies v. Commissioner, 54 T.C. 170, 176 (1970) (property that was a residence in the taxpayer's hands was business property in the land trust's hands); or (3) the Essex Drive trust was a mere nominee, a sham, or should otherwise be disregarded, see Norton v. Commissioner, T.C. Memo. 2002-137 (land trusts disregarded as shams and income taxable to beneficiaries). These issues are deemed waived. See Rule 40; Muhich v. Commissioner, 238 F.3d 860, 864 n.10 (7th Cir. 2001) (issues not addressed or developed are deemed waived--it is not the Court's obligation to research and construct the parties' arguments), affg. T.C. Memo. 1999-192; 330 W. Hubbard Rest. Corp. v. United States, 203 F.3d 990, 997 (7th Cir. 2000) (same); Larson v. Northrop Corp., 21 F.3d 1164, 1168 n.7 (D.C. Cir. 1994) (declining to reach issues neither argued nor briefed). Accordingly, our decision in the case will be based upon the extent to which section 1.163-1(b), Income Tax

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (I.R.C.) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Regs., applies and on the arguments the parties asserted or briefed with respect thereto.

For 2003 and 2004, respectively, respondent concedes that petitioner is entitled to deductions for: (1) State and local income taxes of $3,823 and $4,161; (2) real estate taxes of $3,346 and $5,020; (3) charitable contributions of $11,263 and $11,637; (4) miscellaneous expenses of $1,330 and $989 (before application of the section 67(a) 2-percent floor); and (5) "Schedule E" net losses of $81,226 and $34,645.

The issues remaining for decision for 2003 and 2004 are whether petitioner is: (1) Entitled to his claimed mortgage interest deductions; (2) liable for the section 6651(a)(1) additions to tax; and (3) liable for the section 6662(a) accuracy-related penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Michigan when the petition was filed.

I. The Essex Drive Trust: Formation and Trust Agreement

In 2003 Michael and Zina Gedz transferred legal and equitable title to 325 Essex Drive (Essex Drive property) for a

5-year period[2] to Equity Holding Corp. as trustee for the Essex

Drive Trust pursuant to a trust agreement.  A warranty deed

memorializing the transfer was recorded by the Register of Deeds,

Oakland County, Michigan.[3]

The trust agreement provides that the purpose of the Essex

Drive Trust is to hold the Essex Drive property and the proceeds

and profits therefrom in trust for the beneficiaries' use and

benefit.  The trustee is to deal with the Essex Drive property

only when the beneficiaries authorize it to do so.

According to the trust agreement, the beneficiaries'

"interests * * * consist solely" of:  (1) A power of direction to

authorize the trustee to deal with the Essex Drive property;[4]

(2) the right to receive or direct the disposition of proceeds

from the Essex Drive property; (3) the right to purchase, lease,

manage, and control the Essex Drive property; and (4) "the

---

[2]  The trust agreement provides that the Essex Drive trust
would terminate on Feb. 28, 2008, unless extended by mutual
direction of the beneficiaries.

[3]  The Gedzes also executed a beneficiary agreement, an
assignment of beneficial interest, and a rider to the trust
agreement with Bill Gatten (Mr. Gatten).  These documents define
their interests, rights, and obligations.  The Gedzes transferred
to Mr. Gatten a 90-percent beneficial interest and the
corresponding proportionate share of the power of direction.

[4]  The power of direction includes the right to direct the
trustee to make and execute contracts or deeds for the sale of,
to execute mortgages, leases, or options on, and to otherwise
deal with the Essex Drive property; to dispose of the proceeds
from rentals, mortgages, insurance, and sales; and to dispose of
the Essex Drive property.

obligation for expenses and disbursements relative to the trust property."  The beneficiaries' rights to the proceeds are "deemed to be personal property"; the beneficiaries do not possess "any right, title, or interest * * * [in the Essex Drive property] either legal or equitable".[5]  Expenses of the Essex Drive Trust are allocated among the beneficiaries according to their respective percentages of beneficial interests unless otherwise agreed.  The beneficiaries also are required to obtain insurance for the Essex Drive property.  A beneficiary's interest passes to an executor or administrator of his or her estate on death; otherwise, a transfer of a beneficiary's interest to a third party is subject to the other beneficiaries' rights of first refusal, and no assignment of a beneficiary's interests is valid unless all beneficiaries consent, a copy of the assignment is delivered to the trustee, and the trustee indicates its acceptance thereon.

The trust agreement further provides that the trustee is not obligated to file any Federal income tax returns or schedules on behalf of the Essex Drive Trust notwithstanding "section 671 of the * * * [I.R.C.] of 1954 or any other applicable regulations."[6]

---

[5]  The trust agreement further provides that a beneficiary "has only an interest in the proceeds and profits" and the trustee is to "vest with full legal and equitable title to the" Essex Drive property.

[6]  The trust agreement does not discuss sec. 641 (tax
(continued...)

If it becomes necessary for the Essex Drive Trust to file a Form 1041, U.S. Income Tax Return for Estates and Trusts, or other informational returns under "section 6031 of the * * * [I.R.C.] of 1954," the trustee will not be obligated to prepare them, but the trustee will sign informational returns if necessary at the beneficiaries' request. The beneficiaries are to report and pay all taxes on the earnings and proceeds of the Essex Drive property or otherwise arising from their beneficial interests.

II.  Petitioner's Beneficial Interest and Trust Documents

In 2003 the Gedzes assigned a 40-percent beneficial interest in the Essex Drive Trust to BOGAT Management and a 50-percent beneficial interest in the Essex Drive Trust to petitioner and Sandra Adams.[7]

A.  Beneficiary Agreement

The Gedzes, BOGAT Management, and petitioner and Sandra Adams entered into a beneficiary agreement that provides that the beneficiaries collectively have the:  (1) Power of direction to authorize the trustee to deal with the Essex Drive property's

_____

[6](...continued)
imposed on taxable income of estates or of any kind of property held in trust) or 6012(a)(4) (return filing requirement for trusts with "any taxable income, or gross income of $600 or over, regardless of the amount of taxable income").  As stated supra, neither party briefed these issues, and we do not discuss them further.

[7]  Sandra Adams is petitioner's wife; they were separated when the petition was filed.

title; (2) "right to receive and/or direct the disposition of proceeds from rentals, mortgages, sales, or other related income sources"; (3) right and duty to manage the Essex Drive property; and (4) obligation to pay the Essex Drive property's expenses. The beneficiaries' interests in the Essex Drive Trust are personal property interests. The beneficiaries share in the Essex Drive property's earnings, gains, proceeds, and expenses according to their respective percentages of beneficial interests. No beneficiary may make material alterations or improvements to the Essex Drive property without the trustee's and the other beneficiaries' prior written consent. The beneficiaries' rights to transfer their beneficial interests are subject to the provisions of the trust agreement, and any transfer must be agreed to by a majority of the beneficiaries.

The beneficiary agreement further provides that the Essex Drive property will be sold at termination (i.e., February 28, 2008) subject to a first right to purchase (right of first refusal) held by petitioner and Sandra Adams. The terms of the right of first refusal are that the Essex Drive property is to be made available for sale to petitioner and Sandra Adams at a price equal to what would be proposed by a third party and that they have a right to offset the sale price by the value of their share of profits and any contributions that are agreed to have been

paid by and refundable to petitioner and Sandra Adams.[8] Petitioner and Sandra Adams' right of first refusal "begins with the date of * * * [the beneficiary agreement (March 1, 2003) and terminates on the Essex Drive property's] sale or other disposition."  According to "Exhibit 'A' To Beneficiary Agreement", petitioner and Sandra Adams' refundable contribution is $12,000.  Their initial contribution consists of all nonrecurring costs contributed including closing costs, contributions to existing equity "($0.00 -'Down Payment')," realtor commissions, and costs of agreed-upon expenditures for repairs and capital improvements to the Essex Drive property by petitioner and Sandra Adams.  Petitioner and Sandra Adams' contributions are "Refundable At Termination, If Equity Permits".

B.  "NEHT Occupancy" Agreement

The beneficiary agreement also provides that no beneficiary is entitled to occupy or possess the Essex Drive property unless an NEHT Occupancy agreement accompanies the beneficiary agreement.  The NEHT Occupancy agreement refers to the Essex Drive Trust as "Landlord" and to petitioner and Sandra Adams as "Tenant" and provides that Landlord agrees to lease to Tenant the Essex Drive property.  Tenant is to pay rent of $2,900 per month, which includes principal and interest on all loans secured by the

---

[8]  From the record, it appears that the sale price of the Essex Drive property that petitioner and Sandra Adams agreed to was $320,000.

Essex Drive property.  Tenant is required to maintain insurance coverage for and is liable for all repairs and maintenance of the Essex Drive property.  Tenant may not make material alterations to the Essex Drive property without Landlord's consent, and expenditures for repairs are not refundable or creditable to Tenant unless done at Landlord's written direction.  Tenant may not assign or sublet his interest under the NEHT Occupancy agreement.

C.  Related Documents

Petitioner and Sandra Adams received other documents for the Essex Drive property.  The first document, titled "Beautiful Home", states:  (1) No bank qualifying, no credit approval, and immediate tax benefits; (2) "Rent to Own"; (3) three payments and closing costs get you in at $320,000; and (4) participate in future appreciation and benefit in equity buildup.  The second document, titled "How We (TK Investment Properties, LLC) Can Benefit You (the Buyer))", states that benefits provided to a buyer include:  (1) Easier credit qualification and payment arrangements; (2) entitlement to all income tax deductions for "Mortgage Investors and Property Tax payments," even though title does not pass to buyer; (3) receipt of equity buildup from reduction of the mortgage principal as payments are made; (4) receipt of appreciation of the Essex Drive property; (5) protection of the Essex Drive property from the buyer's

creditors; and (6) the pride of ownership without the rules and constraints of conventional real estate acquisition and mortgage processes. These documents include an amortization table that was provided to petitioner and Sandra Adams, and it sets forth the amounts of mortgage interest and principal paid for each payment.

## III. Petitioner's Occupancy

Petitioner and Sandra Adams moved into the Essex Drive property in June 2003 and resided there for 5 years. During that time petitioner made improvements to the Essex Drive property. For example, he replaced the cedar deck for about $1,700 and installed an automatic garage door opener for about $500 to $600. He relandscaped the Essex Drive property and incurred costs of about $1,500 for "Dirt shoveling, [and] stuff like that." He also incurred costs of about $500 to $600 to have glass block windows installed in the basement because of Michigan's harsh winters. The Essex Drive property's value declined, however, and at the end of the contract term petitioner did not exercise the right of first refusal to purchase the Essex Drive property.

Petitioner sent Equity Management Services[9] payments of $2,900 per month that included principal and interest on all loans secured by the property. Petitioner credibly testified

---

[9] The Gedzes and the Essex Drive Trust used Equity Management Services as a "bill paying" or collection service.

- 11 -

that the fair rental value of the Essex Drive property was about $1,500 to $1,600 per month.

The escrow account statements from which the mortgage payments were made bear the Gedzes' names as mortgagees, and the Forms 1098, Mortgage Interest Statement, also bear the Gedzes' names as mortgagees.[10]  Equity Management Services sent petitioner copies of the escrow account statements and the Forms 1098.

IV.  Petitioner's Tax Returns

Petitioner filed his 2003 Form 1040, U.S. Individual Income Tax Return, in November 2005.  He filed his 2004 Form 1040 in February 2006.[11]  For 2003 and 2004, respectively, he claimed mortgage interest deductions of $24,135 and $23,471 that respondent disallowed.

OPINION

Petitioner has neither claimed nor shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent.  Accordingly, petitioner bears the burden of proof.  See Rule 142(a).

---

[10]  The Gedzes' mortgage is held by National City Mortgage Co.  There is no indication in the record as to the original principal amount.

[11]  Petitioner did not apply for extensions of time to file his Forms 1040.

I.  Mortgage Interest Deductions

Section 163(h)(1) generally disallows a deduction for personal interest.  An exception to this rule is qualified residence interest.  Sec. 163(h)(2)(D).  Qualified residence interest includes interest paid or accrued during the taxable year on acquisition indebtedness.  Sec. 163(h)(3)(A).  Acquisition indebtedness means any indebtedness that is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer and is secured by the residence.  Sec. 163(h)(3)(B)(i).  A qualified residence includes the principal residence of the taxpayer.  Sec. 163(h)(4)(A).

Generally, for interest on a mortgage to be deductible the indebtedness must be an obligation of the taxpayer and not an obligation of another.  Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).  But section 1.163-1(b), Income Tax Regs., provides: "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness."  Where a taxpayer has not established legal, equitable, or beneficial ownership of property, we have disallowed the taxpayer's claimed mortgage interest deduction.  Hynes v. Commissioner, 74 T.C. 1266, 1288 (1980); Song v. Commissioner,

T.C. Memo. 1995-446; <u>Bonkowski v. Commissioner</u>, T.C. Memo. 1970-340, affd. 458 F.2d 709 (7th Cir. 1972).

The Court considers State law to determine the nature of the taxpayer's property rights. <u>United States v. Natl. Bank of Commerce</u>, 472 U.S. 713, 722 (1985); <u>Aquilino v. United States</u>, 363 U.S. 509, 513 (1960).[12] The Court also considers certain factors to determine whether a taxpayer is an equitable or beneficial owner of the property, including whether the taxpayer: (1) Has a right to possess the property and to enjoy the use, rents, or profits thereof; (2) has a duty to maintain the property; (3) is responsible for insuring the property; (4) bears the property's risk of loss; (5) is obligated to pay the property's taxes, assessments, or charges; (6) has the right to improve the property without the owner's consent; and (7) has the right to obtain legal title at any time by paying the balance of the purchase price. <u>Blanche v. Commissioner</u>, T.C. Memo. 2001-63, affd. 33 Fed. Appx. 704 (5th Cir. 2002).

Under Michigan law, the term "trust" includes an express trust wherever and however created (with certain exceptions not shown here). Mich. Comp. Laws Serv. sec. 700.1107(m) (Lexis Nexis 2005). Express trusts may be created to sell, mortgage, or

---

[12] Whatever rights or interests petitioner held in the Essex Drive property are determined under Michigan law because the property is in Michigan, see <u>Altmann v. Commissioner</u>, 20 T.C. 236, 252 (1953), and the trust agreement provides that it is governed by Michigan law.

lease lands; to receive the rents and profits of lands and apply them to the use of any person, during the life of the person, or for any shorter term subject to the rules prescribed in Mich. Comp. Laws Serv. chapter 554; or for the beneficial interest of any person where the trust is fully expressed and clearly defined upon the face of the instrument creating it subject to the limitations as to time.  Mich. Comp. Laws Serv. sec. 555.11 (Lexis Nexis 2007).

Petitioner's property rights or interests are as follows: he is a beneficiary of the Essex Drive Trust, which meets the definition of an express trust under Michigan law; however, the trust agreement provides that he does not have any right, title, or interest in the Essex Drive property.[13]  See id.  Other documents refer to him as a buyer and certain attributes of a sale are present such as a downpayment, closing costs,[14] and petitioner's payment of principal and interest, while other attributes of a sale are not present such as a transfer of the

---

[13]  As stated supra pp. 3-4, the trust agreement provides that its purpose is to hold the Essex Drive property and the proceeds and profits therefrom in trust for the beneficiaries' use and benefit; and collectively, the trust documents were used to facilitate the purported lease of the Essex Drive property to petitioner.

[14]  Petitioner and Sandra Adams agreed to pay their respective closing costs pursuant to the document titled Assignment of Beneficial Interest, and as stated supra, the document titled Exhibit A To Beneficiary Agreement also references closing costs and a downpayment.

Essex Drive property by deed to petitioner.  The NEHT Occupancy agreement refers to him as Tenant and to his monthly payments as rent.  The escrow account statements, the Forms 1098, and an amortization table were sent to petitioner, even though he was not personally liable for the mortgage, and the escrow account statements and the Forms 1098 bear the Gedzes' names.  We now turn to the benefits and burdens of ownership factors.

Some factors weigh in favor of finding that petitioner had assumed the benefits and burdens of ownership of the Essex Drive property while others weigh against.  Factors that indicate that petitioner assumed the benefits and burdens of ownership are: (1) He had a duty to repair or maintain the Essex Drive property; (2) he was responsible for insuring the Essex Drive property; (3) he had a duty to pay the Essex Drive property's taxes, assessments, or charges; (4) he had a right to the Essex Drive property's proceeds from rents, mortgages, or sales; (5) he had the right to obtain legal title at any time by paying the balance of the purchase price:  his right of first refusal began on the date of the beneficiary agreement and terminated on the Essex Drive property's sale or other disposition; (6) he bore some risk of loss because he was required to maintain insurance on the Essex Drive property and because he could lose his refundable contribution, which may have included the value of the improvements petitioner made, if there was no equity in the Essex

Drive property; and (7) he agreed to pay the mortgage principal and interest under the NEHT Occupancy and beneficiary agreements. See <u>Amundson v. Commissioner</u>, T.C. Memo. 1990-337 (finding agreement to make mortgage payments created "enforceable interest-bearing debt" to taxpayer's sister); see also <u>Belden v. Commissioner</u>, T.C. Memo. 1995-360.[15]  In short, petitioner treated the Essex Drive property as if he owned it.  See <u>Amundson v. Commissioner</u>, <u>supra</u> (taxpayer's performance of obligations as owner is indicative of ownership interest); see also <u>Trans v. Commissioner</u>, T.C. Memo. 1999-233 (same); <u>Uslu v. Commissioner</u>, T.C. Memo. 1997-551 (same).

Factors that indicate that petitioner did not assume the benefits and burdens of ownership are:  (1) He could choose not to exercise his right of first refusal and to walk away from the Essex Drive property, see <u>Randolph v. Reisig</u>, 727 N.W.2d 388, 392 (Mich. Ct. App. 2006) (right of first refusal does not create interest in land); see also <u>Jones v. Commissioner</u>, T.C. Memo. 2006-176 (optionee was not entitled to mortgage interest deduction because under California law he had no ownership

---

[15]  Pursuant to the beneficiary agreement, the beneficiaries agreed that any failure to pay the Essex Drive property's expenses created, at the option of the majority interest of the other beneficiaries, a debt from the delinquent beneficiary to the other beneficiaries plus 10 percent interest per annum until paid.  Moreover, the "uncollected balance" might be collected by lawsuit or by charge against the proceeds otherwise due to the delinquent party.

interest in property and because he had not acquired sufficient benefits and burdens of ownership to establish that he was equitable owner); (2) he had to enter into an NEHT Occupancy agreement with the Essex Drive Trust to possess or enjoy the use of the Essex Drive property, see Ryan v. Commissioner, T.C. Memo. 1995-579; and (3) although petitioner made substantial improvements to the Essex Drive property, the beneficiary and NEHT Occupancy agreements provide that he could not make material alterations or improvements to the Essex Drive property without certain consents.

On the unique facts of this case, we conclude that the benefits and burdens that favor ownership outweigh the factors against ownership. Petitioner has assumed the benefits and burdens of ownership of the Essex Drive property. See, e.g., Derr v. Commissioner, 77 T.C. 708, 725-728, 724 n.11 (1981) (beneficiary of an Illinois land trust possessed most attributes of ownership). Petitioner, therefore, is entitled to the mortgage interest deductions. Respondent's determinations are not sustained.

## II. Section 6651(a)(1) Additions to Tax

The section 6651(a)(1) additions to tax were based on the deficiencies. Because of our holding that petitioner is entitled to the mortgage interest deductions and because respondent conceded the other deductions that he had disallowed in the

notice of deficiency, see <u>supra</u> p. 3, petitioner is not liable for the deficiencies.  As there are no deficiencies, petitioner is not liable for the additions to tax.

III.  <u>Section 6662(a) Accuracy-Related Penalties</u>

Because of our holding that petitioner is entitled to the mortgage interest deductions and because respondent conceded the other deductions that he had disallowed in the notice of deficiency, see <u>supra</u> p. 3, there are no underpayments[16] of tax. Therefore, petitioner is not liable for the section 6662(a) accuracy-related penalties.  Respondent's determinations are not sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

_____

[16]  An "underpayment" is the amount by which the tax imposed exceeds the excess of the sum of the amount shown as the tax by the taxpayer on his return, plus amounts not so shown that were previously assessed (or collected without assessment), over the amount of rebates made.  Sec. 6664(a).